IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONDA TRADING AMERICA CORPORATION, a California corporation,<br><br>            Plaintiff,<br><br>vs.<br><br>LEXINGTON INSURANCE COMPANY, a Delaware corporation,<br><br>            Defendant. | Case No. 2:05-cv-1046-RRB-PAN<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Before the Court is Plaintiff Honda Trading America Corporation ("Honda") with a Motion for Summary Judgment on Honda's sole claim asserted in its Complaint for Breach of Contract.[1] Defendant Lexington Insurance Company ("Lexington") opposes and submits its own Motion for Summary Judgment arguing that Honda's claim is without merit.[2] The Court determined that oral argument was not necessary.

---

[1]   Clerk's Docket No. 16.

[2]   Clerk's Docket No. 18.

Because the Court finds that the insurance policy is unambiguous and does not include coverage for Honda's claimed losses, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

## II.  FACTS

International Ag Commodities, Inc. ("IAC") conducted a hay pressing business on property known as 875 Alfalfa Plant Road, Courtland, California (the "Alfalfa Plant Road property").[3] IAC operated its hay pressing business from a number of buildings on this property, including a "Press Barn" containing tools and equipment and a modular office building ("MOB") containing office machines.[4]

In January of 2002, IAC borrowed money from Honda, who at the time was IAC's primary customer.[5] The loan was secured by a deed of trust to the Alfalfa Plant Road property, including all of the improvements.[6]

Effective August 15, 2002, Lexington issued an insurance policy in favor of IAC with an expiration date of August 15, 2003.[7]

---

[3]  Clerk's Docket No. 16 at Vose Dec. ¶ 3.

[4]  *Id.* at ¶ 4.

[5]  *Id.* at ¶ 5.

[6]  *Id.* at ¶ 6.

[7]  *Id.* at ¶ 7.

On April 20, 2003, a fire occurred on the Alfalfa Plant Road property resulting in substantial losses, including to the Press Barn and the business personal property ("BPP") therein.[8] This BPP was valued by IAC through its independent insurance adjuster in the sum of $221,107.48 (the "claimed losses").[9]

In January of 2004, IAC defaulted on its obligations owing to Honda and Honda foreclosed on the loan in June of 2004.[10] As part of the foreclosure, IAC assigned to Honda any and all rights arising under the Lexington insurance policy, including for the claimed losses.[11]

On August 13, 2004, IAC's independent insurance adjuster presented IAC's position to Lexington regarding the claimed losses.[12] Lexington paid $5000 to Honda under the policy.[13] Honda proceeded to bring the current lawsuit.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine

---

[8]  *Id.* at ¶ 14.

[9]  *Id.* at ¶ 16.

[10]  *Id.* at ¶ 18.

[11]  *Id.* at ¶ 19.

[12]  *Id.* at Migdal Dec. ¶ 8.

[13]  *Id.* at ¶ 10.


dispute as to material facts and if the moving party is entitled to judgment as a matter of law. The moving party has the burden of showing that there is no genuine dispute as to material fact.[14] The moving party need not present evidence; it needs only point out the lack of any genuine dispute as to material fact.[15] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[16] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[17] However, the nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[18]

**IV. DISCUSSION**

The question before the Court is at its heart quite basic: whether the policy provided coverage for the claimed losses. In California, "the interpretation, construction and application of

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[15] *Id.* at 323-25.

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[17] *Id.* at 255.

[18] *Id.* at 248-49.

an insurance contract is strictly an issue of law."[19]  Provisions in an insurance policy are to be interpreted in their "ordinary and popular sense."[20]  "Thus, if the meaning a lay person would ascribe to contract language is not ambiguous, [the court will] apply that meaning."[21]  However, if there is any ambiguity in the insurance policy, the ambiguity will be construed against the insurer.[22]  Only if there is any ambiguity will the Court proceed to determine "whether coverage is consistent with the insured's objectively reasonable expectations."[23]

Here, in general, fire is a loss covered by the policy.[24]  However, whether more than $200,000 worth of BPP in the Press Barn was covered requires a more careful reading of the policy.  The Building and Personal Property Coverage Form states:

> b.   <u>Your Business Personal Property</u> located In or on the building described in the Declarations or in the open (or in

---

[19] *Jordan v. Allstate Ins. Co.*, 116 Cal.App.4th 1206, 1212 (2004)(quoting *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins, Co.* (1996)).

[20] *Id.* at 1213 (quoting *AIU Ins. Co. v. Superior Court* (1990)).

[21] *Id.*

[22] *Id.* at 1213-14.

[23] *Id.* at 1213 (quoting *Bank of the West v. Superior Court* (1992)).

[24] Clerk's Docket No. 16 at Ex. A at Causes of Loss - Basic Form ¶ A.1.

>           vehicle) within one hundred (100) feet of
>           the described premises, <u>consisting of the
>           following unless otherwise specified in
>           the Declarations</u> or on the Your Business
>           Personal Property Separation of Coverage
>           form.
>           1)   Furniture and fixtures;
>           2)   Machinery and equipment;
>           3)   "Stock";
>           4)   All other personal property owned by
>                you and used in your business;
>           5)   Labor, materials or services
>                furnished or arraigned by you on
>                personal property of others; and
>           6)   Your use interest as tenant in
>                improvements and betterments.
>                Improvements and betterments are
>                fixtures, alterations, installations
>                or additions:
>                a)   Made a part of the building or
>                     structure you occupy by do not
>                     own; and
>                b)   You acquire or made at your
>                     expense but cannot legally
>                     remove.[25]

Thus, BPP in general is covered by the policy, unless specified otherwise in the Declarations.  The Declarations state:

>      Item 5.  Description of Property Covered:
>      Real and personal property, stock and
>      equipment floater as per schedule on file with
>      Western Risk Specialists, Inc., 121 Spear
>      Street, San Francisco, CA 94105.[26]

Additionally, Endorsement # 2 states:

>      2.  The premium for this policy is based upon
>      the Statement of Values on file with the

---

[25] *Id.* at Building and Personal Property Coverage Form ¶ A.1.b (emphasis added).

[26] *Id.* at Declarations.

>    Company, or attached to this policy.  In the event of loss hereunder, liability of the Company, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:
>    a.   The actual adjusted amount of loss, less applicable deductible(s).
>    b.   <u>The total stated value for the property involved, as shown on the latest Statement of Values on file with the Company, less applicable deductible(s)</u>.
>    c.   The limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto this policy.[27]

The Statement of Values does not identify BPP in the Press Barn.

Reading the policy as a whole, there is no ambiguity concerning the lack of coverage for BPP in the Press Barn.  Nowhere does the policy purport to cover over $200,000 worth of BPP in the Press Barn.  Honda argues that the Declarations include "without limitation <u>all</u> of IAC's 'real and personal property'" and only require items in the floater to be on the schedule on file.[28]  Under this reading, there is no requirement for BPP to be on the schedule or even identified in the policy.  But this reading does not explain why there is a specific provision for BPP in the MOB.[29]  However, even assuming that this reading of the Declarations is correct and that the Press Barn BPP does not need to be scheduled,

---

[27] *Id.* at Endorsement # 2 ¶ 2 (emphasis added).

[28] Clerk's Docket No. 24 at 4 (emphasis in original).

[29] Clerk's Docket No. 16 at Ex. B.

the policy still does not cover $221, 107.48 worth of BPP in the Press Barn.

Endorsement # 2 limits Lexington's liability to "The total stated value for the property involved, as shown on the latest Statement of Values on file with the Company."  The Statement of Values on file with Lexington includes the BPP in the MOB, valued at $15,000, and the 27 listed items on the Inland Marine Application with their insured values.[30]  There is no identification of any BPP in the Press Barn.  Contrary to Honda's argument, the fact that Press Barn BPP is not listed on the Statement of Values does not mean that it is covered.  Such a reading would negate the fact that "[t]he premium for this policy is based upon the Statement of Values on file with the Company."[31]

---

[30]   Clerk's Docket No. 22 at ¶ 18.  Honda argues that the Statement of Values did not encompass the listed equipment on the Inland Marine Application. Clerk's Docket No. 24 at 5.  However, the evidence relied on by Honda does not create a disputed issue of fact.  First, nowhere does the policy purport to limit the Statement of Values to the ACORD Property Section form.  See Clerk's Docket No. 16 at Ex. A.  Second, the deposition of James Cook did not concern which documents made up the Statement of Values.  Clerk's Docket No. 26 at I at 65:16-66:19.  Finally, Honda's reading ignores the plain language of Endorsement # 2 which states: "It is understood and agreed that the following special terms and conditions apply to this policy." Clerk's Docket No. 16 at Ex. A.  The Endorsement does not limit itself to only applying to part of the policy, rather than the policy as a whole.  Thus, the Court finds that there is no issue of fact concerning whether the Statement of Values encompassed the scheduled equipment on the Inland Marine Application.

[31]   Clerk's Docket No. 22 at Ex. 1 at Endorsement # 2 ¶ 2.

Thus, items that are not listed as part of the Statement of Values were not paid for by IAC in the premium and should not be covered by the policy.

Honda also argues that the Lexington policy was an "open" policy in which "the value of the subject matter is not agreed upon, but is left to be ascertained in case of loss."[32] However, Honda overlooks the ACORD Property Section application forms that listed the amount of insurance for each item.[33] These forms show that the value of the property insured was part of the insurance policy, and that the value of the property was not left to be ascertained in case of loss. The fact that the claimed losses were not listed does not make the policy an open policy, rather it shows that this subject matter was not covered. Under Honda's reading, Honda could obtain coverage for any BPP destroyed, whether it had applied and paid for coverage or not. This was not the case, as further evidenced by the Endorsements added after the policy was issued.[34]

In conclusion, there is no evidence in the policy that the parties agreed that the Lexington policy would cover $221,107.48 worth of BPP in the Press Barn. The Court cannot adopt

---

[32] Clerk's Docket No. 16 at 11; California Ins. Code § 411.

[33] Clerk's Docket No. 22 at Ex. 1.

[34] Clerk's Docket No. 16 at Ex. 1 at Endorsement Nos. 7, 8, 11.

Honda's strained interpretation of the policy in order to create an ambiguity where there is none in the plain language of the policy.[35] Honda failed to meet its burden establishing that the claimed losses fall within the policy's coverage.

Because the Court does not find the policy ambiguous, it does not need to consider IAC's reasonable expectations concerning coverage.

**V.   CONCLUSION**

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **DENIED** (Clerk's Docket No. 16) and Defendant's Motion for Summary Judgment is **GRANTED** (Clerk's Docket No. 18).

ENTERED this 6th day of March, 2006.

/s/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[35] *See Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 807 (1982).